Opinion delivered April 11, 1887.

## No. 5836.

## Dick Andrews *v.* The State.

Theft — Possession of Recently Stolen Property — Evidence.— Possession of the alleged stolen property was the sole proof relied upon for a conviction. The evidence as to what was the explanation of the accused, when his right of possession was first called in question was conflicting, and the accused proposed to prove his second explanation, which he was not permitted to do. *Held* that, in view of the facts that the State's witnesses contradicted each other on the question, and that the proposed second explanation of the accused was corroborative of his first explanation as testified to by his witnesses, the proposed evidence should have been recieved.

Appeal from the District Court of Harrison. Tried below before the Hon. J. G. Hazlewood.

The conviction in this case was for the theft of a cow, the property of Doctor E. B. Blocker, in Harrison county, Texas, on the third day of February, 1888. The penalty assessed against the appellant was a term of two years in the penitentiary.

Morris Bath was the first witness for the State. He testified that he saw the defendant in possession of Doctor Blocker's cow on or about February 1, 1888. The cow was then in the defendant's yard. Defendant told witness that the cow was his, but did not say where he got her. The cow, when the witness saw

her, was standing in defendant's yard near the house, and looked to witness like she was tied. Witness asked the defendant who owned that cow, and he replied that he did. Witness had often seen that cow before, and thought at the time that she was Doctor Blocker's cow. Defendant did not tell the witness that he had had the cow at his sister's house in the country, and had brought her to town because she was soon going to have a calf. The witness did not positively know at that time that the cow he saw in defendant's lot was the Blocker cow, but thought so, and asked defendant who owned her because it occurred to him that perhaps defendant had traded with Doctor Blocker for her. The animal was a black and white spotted muley cow.

Cross examined, the witness said that defendant lived in a house in his, witness's, yard, and it was in that yard that witness saw the cow. The yard fence joined the defendant's house, and witness thought that, when he first saw the cow in the yard that she was tied to the fence. Witness, defendant and Doctor Blocker lived on the same street in Marshall. Defendant kept that cow in the yard until she was taken away by Mr. Hooper for Doctor Blocker. She was in full view of the streets while in that yard, in which there was no weeds, undergrowth nor anything else to obstruct the view. The street referred to was one of the principal streets of Marshall, and was traveled a great deal. The lot was about two acres in size, and was occupied by the cow for about two weeks. When the witness asked the defendant if the cow did not belong to Doctor Blocker, he answered: "No; she is mine." The residence of Doctor Blocker and defendant were about four hundred yards apart.

John Hooper testified, for the State, that the cow mentioned in the indictment belonged to Doctor Blocker. Witness hunted two or three weeks for the cow after her disappearance, and finally found her in the possession of the defendant, and took her to Doctor Blocker's house from the defendant's house. Defendant was not at home, but his wife was, when witness got and took the animal off.

Doctor E. B. Blocker testified, for the State, that he was the owner of the cow described in the indictment. She disappeared about the time mentioned in the indictment, and was gone about two weeks before witness recovered her. She was taken from the witness's possession without his consent.

Cross examined, the witness said that the defendant came to

his house on the evening after he recovered his cow and said to him: "I hope you won't accuse me of stealing your cow. A party of men had nine head of cattle, and the cow ran off from them, and I took her up, believing that when the men came back after her they would pay me, and I would make something for taking her up." Witness told defendant in reply that if he would bring the men to him and they confirmed his statement, it would be all right. He said the party consisted of three men on horseback, driving nine head of cattle. He did not mention the names of the men, nor did he ever produce them.

W. G. Rudd was the first witness for the defense. He testified that he had known the defendant for a period of twenty years, during which time the defendant had maintained an unimpeachable reputation for honesty. A day or two after Doctor Blocker's cow was said to have disappeared the defendant came to witness and got some cow feed, which he took off. The defense proposed, but was not permitted, to prove by this witness that, when defendant came to him on the occasion referred to, he told him that he had taken up a stray cow, and wanted to borrow some money from witness with which to buy cow feed, and that witness did not lend him money but gave him the cow feed. This excluded proof, and the proposed evidence of one Johnson and others to the effect that, on several occasions after he took up the cow, the defendant, publicly on the streets of Marshall, declared that he had taken up a stray cow, which he believed belonged to a party of movers who passed through Marshall, is the evidence referred to in the syllabus of this report.

Minnie Andrews, the wife of the defendant, testified, in his behalf, that, on or about the evening of February 1, 1888, the defendant brought home a cow, which he turned into the lot. He said that he took her up in town, and that he thought she had strayed from a bunch driven through town that day by some movers, and that the movers would pay him for taking care of her.

Cross examined, the witness said that when defendant turned the cow into the lot he said that the movers would miss the animal, find out where he was, come back and get her and pay him something for taking care of her; and he directed the witness to deliver the cow to them should they come for her during his absence from home. Defendant further said that one of the cows driven by the movers broke away from them on the public square

of Marshall, and that, afterwards, on his way from home, he saw the cow, which he was satisfied was the cow that broke away from the movers, coming down from the direction the movers had gone, and that he had driven her home to get a reward for taking care of her. Defendant never before took up a cow in town, but when living in the country he often did so, holding the animals for their owners. During the week after the cow was taken up by the defendant Celie Merritt told witness that some movers, driving some cattle, passed her house about the first of February, 1888, and camped that night in the Blalock neighborhood. She agreed, if the movers went back to the Blalock neighborhood, hunting a cow, that she would tell' them that defendant had the animal. Defendant did not go to the Blalock neighborhood to hunt for the movers. He said that they would come back, hunting for the cow. Witness did not know that defendant ever sent word to the movers that he had the cow, but she requested a man to tell them.

Zack Burnett testified for the defense that he lived about a half a mile from Marshall, on the road to the Blalock neighborhood. On or about February 1, 1888, some movers passed his said house. They "bogged up" near witness's place and spent that night in witness's house. They were traveling the Blalock neighborhood road. They had two yoke of oxen, two horses and one mule and a wagon loaded with household goods.

Sally Burnett testified substantially as did the witness, Zack Burnett.

Celie Merritt testified for the defense that she lived about a mile and a half from Marshall, on the Carter's Ferry and Blalock neighborhood road. On or about February 1, 1888, some movers, two of whom were boys, driving some cattle, passed the witness's house. On the next day a woman, driving a wagon, passed witness's house and asked if she saw the persons and the cattle on the day before. Witness replied in the affirmative and the woman drove on in the direction taken by the drovers on the day before.

Cross examined, the witness stated that she could not say how many cattle were in the bunch driven by her house on the occasion mentioned. Witness did not see Minnie Andrews, the wife of the defendant, until after defendant was arrested and put in jail. After the arrest of defendant Minnie Andrews came to witness's house and asked her if she saw the movers who passed her house on or about February 1. Witness told her that she

saw them and she remarked that she would like to know whether or not the said movers or Doctor Blocker owned the cow that was taken up by defendant. Witness knew nothing about defendant taking up a cow until Minnie came to her house after defendant's arrest, and she never promised to tell the movers, if they came back hunting the cow, that defendant had her.

The defense closed.

Morris Bath was recalled by the State and testified that, after the defendant's examining trial, he asked defendant: "What made you take up the cow?" He replied: "I did not think she belonged to Doctor Blocker. I thought she belonged to a black man and took her up. They all do it."

Sam Bath testified, for the State, that while defendant had the cow in the yard on Morris Bath's place he told the witness's father, the said Morris Bath, that he had been keeping the cow at his sister's place in the country and had brought her to town, as she was going to have a calf.

John Hooper, recalled, testified for the State, that defendant topped some trees for Mrs. Womack, who lived on the opposite side of the street from Doctor Blocker, in January, 1888, and that Doctor Blocker's cow, the one described in the indictment, fed on the tops while he was at work.

Mrs. Bath testified, for the State, that when the defendant brought the cow home she asked him if he had bought the animal. He replied that the animal was one he had been keeping in the country.

J. H. Henderson, being placed upon the stand by the defense, testified that he had known the defendant thirty years. During all that time defendant had maintained an unimpeachable reputation for honesty.

The motion for new trial raised the question discussed in the opinion.

*Alexander Pope* and *Wilson & Lane*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. Defendant proposed to prove by several witnesses that, on the day after he took possession of the alleged stolen cow, he stated that he had taken up said cow as an estray, and believing the same to be an estray. This proposed testimony was rejected upon objection made thereto by the dis-

trict attorney, upon the ground that such statements were self serving declarations. At the time said declarations are alleged to have been made, the defendant had possession of the cow. We are of the opinion that the court erred in rejecting said testimony. It is well settled that, when possession of recently stolen property is relied on as inculpatory of the defendant, his explanation of such possession is admissible in his behalf, if such explanation was given on the first occasion for any explanation by him; that is, when he was first directly or circumstantially called upon to explain his possession. (Willson's Crim. Stats., section 1300.)

It is true that the rejected explanation is not the first made by the defendant. He had explained his possession of the cow to other witnesses on the day previous, the day on which he was first seen in possession of the cow. With respect to these prior explanations, some of which were proved by the State and others by the defendant, the testimony was conflicting, and even the State's witnesses, with regard to said explanations, contradicted each other. One of these prior or first explanations was that he had taken up the cow in town; that she belonged to some movers, and he thought he would get paid for taking care of her. This explanation was made when he brought the cow home, and when he was first called upon to explain his possession of her. The rejected testimony as to explanations subsequently made by him was corroborative of said first explanation; and while perhaps, ordinarily, such subsequent explanations would not he held admissible, we think where, as in this case, the testimony is conflicting and uncertain, it is fair and just that the defendant should have the benefit of them, when they are in corroboration of his first explanation, as they are in this case.

It has been proved by the State that defendant, on the day he took the cow, made different explanations of his possession of her from that proved by the defendant. The State's witnesses did not agree, but contradicted each other as to these explanations. In this state of case the rejected testimony, corroborating, as it does, the other testimony of the defendant, was very material to him. It was for the jury to determine what explanation, in fact, he gave of his possession of the cow when he was first called upon to explain possession, and whether or not such explanation was reasonable, and, if so, whether or not it had been disproved by the State. And to assist the jury in determining these questions, we think it was the right of the defendant to

have placed before them every fact and circumstance legitimately bearing upon and tending to sustain his defense, and tending to support his testimony upon that issue.

Because of the error discussed, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*